# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CHARLIE L. CARLISLE, III,
Plaintiff,

vs.

WILLIAM BAUER, et al.,
Defendants.

Case No. 1:16-cv-259
Barrett, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

Plaintiff Charles L. Carlisle III, an inmate at the Southern Ohio Correctional Facility

(SOCF) in Lucasville, Ohio, brings this pro se civil rights action under 42 U.S.C. § 1983 against

defendants William Bauer, Michael Dillow, Jeremy Eaches, Dr. Faisal Ahmed, and two "John

Doe" defendants. Plaintiff alleges that defendants Bauer, Dillow and Eaches used excessive

force against him on May 12, 2015, and defendant Ahmed refused to provide medical treatment

for his injuries. (Doc. 5). This matter is before the Court on defendants' motion for summary

judgment (Doc. 31), plaintiff's opposing memorandum (Doc. 34), and defendants' reply (Doc.

36). The matter is also before the Court on plaintiff's motion to proffer evidence. (Doc. 37).

## I. Defendants' motion for summary judgment

### A. Summary judgment standard

A motion for summary judgment must be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). A fact is "material" if its resolution will affect the outcome of the

lawsuit. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio

Dec. 30, 2016), *aff'd*, No. 17-3088, 2017 WL 3726755 (6th Cir. Aug. 29, 2017) (citing *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When a party asserts that a fact cannot be or is genuinely disputed, the party must support its assertion by: "(A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). *See also Beans*, 2016 WL 7492503, at *5. The materials a party can rely on to establish the presence or absence of a genuine dispute include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, [and] interrogatory answers[.]" Fed. R. Civ. P. 56(c)(1)(A).

The party who seeks summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In determining if there is a genuine dispute as to a material fact, all evidence in the record is viewed in the light most favorable to the nonmoving party, with all reasonable inferences drawn to that party's benefit. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576-77 (6th Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). To make its determination, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Summary judgment is appropriate only where the evidence presents no genuine disputes of material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The movant can carry its burden by showing that the non-moving party lacks evidence to support an essential element of its case. *See Barnhart v. Pickrel, Shaeffer & Ebeling Co. L.P.A.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). The party opposing a properly

2

supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (quoting *First Nat'l Bank of Arizona*, 391 U.S. at 288-89).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter the party's duty on a summary judgment motion to support his factual assertions with admissible evidence. *Maston v. Montgomery Cnty. Jail Med. Staff Pers.*, 832 F. Supp.2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)).

**B. Facts**

In support of their motion for summary judgment, defendants have submitted medical examination reports and photographs of plaintiff's injuries (Doc. 31, pp. 103-112, 122-125)[1]; the affidavit of William Cool, Deputy Warden of Operations for SOCF (*Id.*, Exh. 4); the DVR recording of the May 12, 2015 use of force incident and an audio recording of plaintiff's Rules Infraction Board (RIB hearing) (Doc. 31, Exh. 5); and documents from the Use of Force investigation and the RIB proceedings, including incident reports, investigation findings, employee statements, plaintiff's statements, conduct reports, and the RIB disposition (*Id.*, Exh. 1, pp. 59-102, 114-121; Exh. 2, pp. 1-11). Plaintiff has submitted additional documents which

---

[1] The page numbers refer to the Bates Stamp numbers.

include an Informal Complaint Resolution stating that he would have the opportunity to review his medical file and take notes and several pages of notes plaintiff appears to have copied from his medical file. (Doc. 34 at 22-27).

The following facts are shown by the record to be undisputed, except where otherwise noted.[2] This lawsuit arises out of an incident that occurred at SOCF on May 12, 2015. On that date, plaintiff was escorted to the J2 unit at SOCF by Officer Miller after an employee reported that plaintiff had attempted to establish a relationship with her. (Doc. 31, Exh. 1, pp. 60-61, 76, 118). After plaintiff arrived in J2 and was placed in the strip cage, defendant Bauer assembled a negotiator, a camera operator, and a five-man team comprised of Officers Tackett, Eaches, Ruckel, Henderson and Dillow. (Doc. 31, Exh. 5, DVR recording, 1:10-1:58). Defendant Bauer explained at the beginning of the recording that plaintiff had become agitated as he was being escorted to J2, he had refused to walk, and he had begun making threats toward staff and refused to comply with strip search procedures once he was in the J2 strip cage. (Id., 00:20-00:36). Bauer explained that the plan was to attempt to negotiate with plaintiff to persuade him to comply with strip search procedures and come out of the strip cage and, if negotiations failed, to use OC (oleoresin capsicum) spray and to then have the five-man team enter the strip cage if plaintiff still refused to come out. (Id., 00:36-1:02).

After Bauer explained the plan, the negotiator approached the strip cage to speak to plaintiff. (Id., 2:22-3:30). Plaintiff stood up from the floor of the strip cage, faced the camera, stated his name, asserted that he would not comply with orders, said he was going to lie back down, and told the negotiator he would say nothing else until he talked to a lawyer. (Id.).

---

[2] The only affidavit or sworn declaration submitted by either party is Cool's affidavit authenticating the DVR and audio recordings. (Doc. 31, Exh. 4). The statements by plaintiff, defendants and other employees that are part of the administrative record and have been offered as evidence on summary judgment are not sworn statements. The Court therefore has not considered the parties' statements in determining whether there is a genuine factual dispute in this case and has referred to those statements only where necessary to fill in gaps in the evidence.

Plaintiff then lay back down on the floor of the strip cage. At one point, he asked the negotiator if he was hungry and held out a sandwich. The negotiator reported that negotiations had failed, at which time Bauer gave plaintiff an order to stand up and be strip searched. (*Id.*, 3:25-3:42). After plaintiff refused to comply, Bauer sprayed OC spray toward plaintiff for approximately two seconds. (*Id.*, 3:45-3:47). Plaintiff stood up and faced away from the officers. Defendant Bauer gave plaintiff a final order to comply with strip search procedures. (*Id.*, 4:00-4:10). The five man team then entered the strip cage, plaintiff was taken to the floor, his arms and legs were secured, and he was assisted to his feet and escorted to J2-13 to have his clothes cut off. (*Id.*, 4:12-5:25).

In J2-13, plaintiff was placed face down on the bed so that his clothes could be removed. (*Id.*, 6:20). As Officers Eaches, Dillow, Ruckel, Henderson and Tackett worked together to cut plaintiff's clothes, plaintiff repeatedly stated he was crazy and asked for help. (*Id.*, 6:35-7:42). Mental health staff was then paged. (*Id.*, 7:42). Bauer also instructed the officers that a nurse would need to check plaintiff. (*Id.*, 8:10). Although the tape does not clearly show everything that happened next, the parties do not dispute that Officer Ruckel struck plaintiff twice with a closed fist 35 seconds later. (*Id.*, 8:45-8:47). According to defendants, as the team was attempting to cut plaintiff's clothes while he was face down on the bed, plaintiff tried to bite defendant Eaches' hand which was on plaintiff's right shoulder. (Doc. 31 at 11; Exh. 5, DVR recording, 8:45; Exh. 1, p. 82, Incident Report, Eaches Statement). Defendants allege that Officer Ruckel struck plaintiff's face with a closed fist in response to plaintiff's action and then immediately struck him a second time with a closed fist because he was still being aggressive with his teeth showing. (Doc. 31 at 11, citing Exh. 1, p. 79, Incident Report Supplement, Ruckel Statement). Plaintiff denies in his response to the motion for summary judgment that he ever

attempted to bite Eaches' hand or otherwise cause harm while he was in restraints. (Doc. 34 at 3, 7). Plaintiff alleges that his mouth appeared to be open with his teeth showing before Ruckel struck him because he "was grasping for air to breath [sic], while being face/pinned down after mace[/]OC was deployed by LT. William Bauer." (*Id.* at 3). Plaintiff alleges that in addition to the OC making it difficult to breathe, Ruckel was applying pressure to his upper right body and Eaches was applying pressure with his right hand to plaintiff's right shoulder. (*Id.*). Plaintiff alleges Ruckel corroborated that it was difficult to breathe due to OC contact by explaining after the incident that he gave no verbal commands because he was having a hard time breathing due to the "mace" in his lungs. (*Id.*, citing Doc. 31, Exh. 1, p. 79, Incident Report Supplement, Ruckel Statement).

After Ruckel struck plaintiff, defendants continued to cut off plaintiff's clothes. (Doc. 32, DVR Recording, 8:45-11:05). Plaintiff was assisted to his feet and his handcuffs were taken off so that his shirt could be removed. (*Id.*, 11:05-12:45). Plaintiff became agitated when defendants attempted to remove his cuffs and shirt. Plaintiff was placed back on the bed and medical staff assessed his injuries. (*Id.*, 13:00). Plaintiff stated to medical staff: "I banged my head into the wall . . . suicide . . . Ain't none of these officers . . . did shit . . . I did this to myself, I banged my head into my wall." (*Id.*, 13:15-13:32). Plaintiff was then dressed in pants and handcuffs, leg irons were put on him, and he was escorted to J2-41, where medical staff assessed him and he was placed under constant watch until later that day. (*Id.*, 13:48-19:20; Doc. 31, Exh. 1, p. 113, "Authorization for Crisis Precaution").

Plaintiff was medically examined by nurses twice during the time he was under watch. (Doc. 31, Exh. 1, pp. 111, 112, Medical Exam Reports). The first exam was performed at 12:00 p.m. (*Id.*, p. 111). The report notes that plaintiff stated, "I did this myself. I banged my head on

the wall because I'm crazy." (*Id*.). In the objective physical findings section, the nurse reported it was difficult to assess plaintiff because of the OC contact and blood on his head and face. (*Id*.). The physical findings noted were multiple superficial lacerations to the forehead and facial area and swelling in both orbital areas and the right forehead. (*Id*.). The nurse assessed plaintiff as ambulating and talking without difficulty. (*Id*.). The nurse reported that plaintiff was instructed to rinse his face and head with water to reveal his wounds but he refused. (*Id*.). Plaintiff was to be brought to the infirmary when the possible security threat he posed decreased. (*Id*.).

Plaintiff was examined again at 1:00 p.m. (*Id*., p. 112). According to the medical exam notes, plaintiff verbalized no complaints to the medical staff. (*Id*.). The injuries noted were a laceration above the right brow, mid-forehead, and above the left ear; edema on the right jawline; and chin irritation due to OC contact. (*Id*.). Plaintiff had full range of motion of the head, neck and jaw; there were two points of tenderness to the orbits or along the jawline; and he was ambulatory with a steady gait and had clear speech. (*Id*.). Plaintiff was decontaminated in the infirmary for OC contact; his wounds were cleaned, closed with "skin stitch," and secured with "steri strips"; an x-ray was ordered; and over-the-counter Motrin was prescribed for pain and edema. (*Id*.). Photographs of plaintiff's injuries were taken. (*Id*., pp. 122-25). Plaintiff alleges that in addition to the injuries reflected in the medical reports, he suffered injuries to his right eye when he was struck in that eye resulting in "bad vision" and seeing black spots on that side, which are not documented in the Medical Exam Reports. (Doc. 34 at 7, citing Doc. 31, Exh. 1, p. 112).

An "Investigative Summary Report" for "Use of Force" was generated on June 1, 2015. (Doc. 31, Exh. 1, pp. 59-68). Captain Robert Clagg chaired the committee investigation. (*Id*.).

Clagg gathered evidence related to the incident, including employee and plaintiff's statements. (*Id.*). The Committee found that (1) the use of force was justified in accordance with Ohio Administrative Code 5120-09-01 and 02, and (2) the force used was not excessive under the circumstances. (*Id.*, p. 62). The Committee concluded:

> The evidence regarding both of these issues is conclusive. The force by Officer Miller and the 5 man team was justifiable. The DVR clearly shows that inmate Carlisle was refusing direct orders causing force to be used to move him out of the holding cage and remove his clothing.

(*Id.*). The Warden concurred with the Committee's findings. (*Id.*, pp. 62-63).

At his RIB hearing, plaintiff pled guilty to Inmate Rule of Conduct 8: Threatening bodily harm to another (with or without a weapon) and was convicted of violating three Rules of Conduct: (1) Inmate Rule of Conduct 20: Physical resistance to a direct order; (2) Inmate Rule of Conduct 21: Disobedience of a direct order; and (3) Inmate Rule of Conduct 24: Establishing or attempting to establish a personal relationship with an employee, without authorization from the managing officer. (*Id.*, Exh. 2, p. 8).

## C. The parties' positions

Defendants move for summary judgment on plaintiff's claims because they allege there are no genuine disputes as to any material fact and they are entitled to judgment in their favor as a matter of law. (Doc. 31). Defendants Bauer, Eaches and Dillow argue that the force used against plaintiff was reasonable under the circumstances and that plaintiff has not alleged that Dillow violated his Eighth Amendment rights. Defendant Ahmed argues that the allegations against him do not rise to the level of deliberate indifference to plaintiff's medical needs. Defendants contend that because plaintiff cannot show a violation of his Eighth Amendment

rights, they are entitled to qualified immunity from liability.[3] Finally, defendants argue that

plaintiff is barred from pursuing his claims under *Heck v. Humphrey*, 512 U.S. 477 (1994),

because a judgment in his favor would necessarily imply the invalidity of administrative rulings

that found him guilty of prison rule infractions.

Plaintiff argues in response that there are genuine disputes of material fact regarding

whether the use of force was justified because he has a history of mental illness and needed

medical assistance at the time of the incident. (Doc. 34). Plaintiff denies that he was attempting

to bite defendant Eaches when Officer Ruckel struck him twice in the face with a closed fist, and

he alleges there was no administrative finding that Ruckel's use of force was justified. Plaintiff

claims that he never gave or signed a written statement on the use of force incident or made oral

statements as alleged by defendants. Plaintiff also argues that the medical evidence raises

questions of fact. Plaintiff alleges that his complaints of bad vision and black spots in the right

eye are not documented in the medical records. Plaintiff also contends that the Use of Force

Investigation Report contains proof of perjury because it references a Medical Exam Report for

"Inmate Rutherford dated 7/3/14" but sets forth the subjective evaluation, objective physical

findings, nurse's assessment and treatment from plaintiff's medical report dated May 12, 2015.

(*Id.*, citing Doc. 31, Exh. 1, p. 67).

In reply, defendants argue that plaintiff cites no medical documentation to support his

allegations that he suffered eye injuries that are not documented in the medical records or to

demonstrate that any such injuries relate to the May 12, 2015 incident. (Doc. 36 at 10).

---

[3] Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The Court need not address whether defendants are entitled to qualified immunity because the record shows there is no genuine dispute that defendants did not violate plaintiff's Eighth Amendment rights, and defendants are therefore entitled to summary judgment in their favor on all claims plaintiff has brought against them.

Defendants also allege in their reply that inclusion of another inmate's name and incident date on the Use of Force Investigation Report is nothing more than a clerical error resulting from the use of a template to generate the report. (Doc. 36 at 9).

### D. The Eighth Amendment

Plaintiff's Eighth Amendment claims are brought under 42 U.S.C. § 1983, which prohibits any person "under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving a United States citizen "of any rights, privileges or immunities secured by the constitution and laws." To prevail on a § 1983 claim, a plaintiff must demonstrate "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

A convicted prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The "core judicial inquiry" whenever a prison official stands accused of using excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Excessive force claims must focus "on the nature of the force rather than the extent of the injury. . . ." *Id.* at 34. In making this inquiry, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the responsible official; and the extent of the injury inflicted. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 320-321.

"While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred."

*Cordell v. McKinney*, 759 F.3d 573, 580-81 (6th Cir. 2014) (citing *Wilkins*, 559 U.S. at 37).

"When prison officials maliciously and sadistically use force to cause harm . . . contemporary

standards of decency always are violated . . . whether or not significant injury is evident.

Otherwise, the Eighth Amendment would permit any physical punishment, no matter how

diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins*, 559 U.S. at

37 (quoting *Hudson*, 503 U.S. at 9). The absence of a serious injury is nonetheless relevant as a

factor that suggests whether the use of force may "plausibly have been thought necessary" in a

given situation. *Id*. (quoting *Hudson*, 503 U.S. at 7).

Corrections officers do not violate a prisoner's Eighth Amendment rights when they use

force "in a good-faith effort to maintain or restore discipline." *Roberson v. Torres*, 770 F.3d

398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004)).

Accordingly, the Sixth Circuit has found no Eighth Amendment violation in numerous cases

involving "the use of . . . chemical agents against recalcitrant prisoners." *Id*. (quoting *Caldwell

v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992) (collecting cases)); *Jennings*, 93 F. App'x at 725

("The videotape squarely demonstrates that Jennings disobeyed repeated direct orders prior to

the use of pepper spray.")). *See also Thompson v. Joseph*, No. 1:12-cv-992, 2014 WL 1685918,

at *7  (S.D. Ohio Apr. 29, 2014) (Report and Recommendation) (Bowman, M.J.) *adopted*, 2014

WL 2172894 (S.D. Ohio May 23, 2014) (the defendant was entitled to qualified immunity

because "no reasonable officer would have understood that it violated the Eighth Amendment to

reactively aim chemical spray at Plaintiff in his cell for less than two seconds (based on the

videotape record), in order to force a threatening inmate to retreat and restore order.")). *But see

Williams v. Curtin*, 631 F.3d 380, 384 (6th Cir. 2011) (the plaintiff stated a valid excessive force

claim when he "allege[d] that, when instructed to 'pack up,' he inquired, 'What for, sir?,' at which point an 'assault team' entered the cell and used a chemical agent on him.").

To establish a violation of his Eighth Amendment rights resulting from a denial of medical care, plaintiff must show that prison officials acted with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). A constitutional claim for denial of medical care has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001). The objective component requires the existence of a "sufficiently serious" medical need. *Blackmore v. Kalamazoo County,* 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 834; *Estelle*, 429 U.S. at 104). A medical need is "sufficiently serious" if it either "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gunther v. Castineta*, 561 F. App'x 497, 499 (6th Cir. 2014) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)).

The subjective component requires an inmate to show that prison officials had "a sufficiently culpable state of mind" in denying medical care. *Farmer*, 511 U.S. at 834. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Gunther*, 561 F. App'x at 500 (quoting *Harrison*, 539 F.3d at 518). "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). In sum, to prove the subjective component, the plaintiff must show that the official: (a) subjectively knew of a risk to the prisoner's health; (b) drew the inference that a substantial risk

of harm to the prisoner existed; and (c) consciously disregarded that risk. *Farmer*, 511 U.S. at 837.

### 1. Eighth Amendment claims against defendants in their official capacity

Plaintiff does not specify whether he brings his Eighth Amendment claims against defendants in their individual capacity, their official capacity, or both. Insofar as plaintiff seeks to bring claims for money damages against defendants in their official capacity, his claims are barred by the Eleventh Amendment to the United States Constitution. A suit against a state official in his official capacity for money damages is treated as a suit against the state itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 654 n.8 (6th Cir. 2007). States are protected by the Eleventh Amendment from suits brought under § 1983, which creates a cause of action against only a "person" who causes the deprivation of another's constitutional rights. *Id.* Accordingly, any claims for money damages plaintiff brings against defendants in their official capacity must be treated as a suit against the state itself and must be dismissed as barred by the Eleventh Amendment.

Plaintiff also seeks injunctive and declaratory relief to prevent future occurrences of the types of violations he alleges. (Doc. 5 at 8). The Court can issue prospective injunctive and declaratory relief to compel a State official to comply with federal law even if compliance might have an "ancillary" effect on the state treasury. *Doe v. Wigginton*, 21 F.3d 733, 737 (6th Cir. 1994) (citing *Edelman v. Jordan*, 415 U.S. 651, 667 (1974)). *See also S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citations omitted). Thus, such claims are not barred by the Eleventh Amendment.

## 2. Plaintiff's Eighth Amendment claims against defendants in their individual capacity

### i. Plaintiff's excessive force claims

Defendant Bauer alleges that plaintiff has not produced evidence to show there is a genuine factual dispute as to whether he violated plaintiff's Eighth Amendment rights by spraying OC spray into the strip cage on May 12, 2015. (*See* Amended Complaint, Doc. 5 at 7). The evidence of record corroborates Bauer's version of the incident and refutes plaintiff's claim that Bauer used unnecessary force in violation of the Eighth Amendment by using OC spray. The DVR recording shows that Bauer used OC spray as a last resort after plaintiff repeatedly refused to obey direct orders and comply with strip search procedures. (Doc. 31, Exh. 5, DVR recording). Bauer explained on camera before using OC spray that it might be necessary to use it due to plaintiff's recalcitrance and the need to obtain his compliance. (DVR recording, 00:36-1:02). Efforts were first made through a negotiator to persuade plaintiff to comply with strip search procedures without the use of force. (DVR Recording, 2:22-3:42). It was only after these efforts proved unsuccessful and plaintiff refused to budge and to comply with the negotiator and Bauer's direct orders that Bauer sprayed the OC spray for a short period of approximately two seconds. (*Id.*, 3:45-3:47). Plaintiff still did not come out of the strip cage, and the five-man team had to enter the cell. (*Id.*, 3:47-4:12). Plaintiff does not allege that he suffered any injury as a result of Bauer's use of the OC spray, and the undisputed evidence shows that the OC spray caused nothing more than a slight injury. Plaintiff underwent two medical examinations on the afternoon of the incident, and "chin irritation" was the only symptom of OC contact that was reported or noted. (Doc. 31, Exh. 1, pp. 111, 112). This evidence showing multiple attempts to secure plaintiff's compliance with strip search procedures, plaintiff's repeated refusal to comply with direct orders so that a strip search could be performed, and the absence of a resulting injury

permits only one conclusion: Bauer used OC spray "in a good-faith effort to maintain or restore discipline." *See Roberson*, 770 F.3d at 406; *Wilkins*, 559 U.S. at 37.

Plaintiff has not introduced any evidence that refutes the facts documented by the DVR recording and calls into question Bauer's motives for deploying the OC spray. Plaintiff has made only vague and unsworn allegations which are insufficient to create a genuine dispute as to whether Bauer's use of force was constitutional. Plaintiff appears to argue he did not understand what was occurring when he was in the strip cell because of a vague mental health issue. Plaintiff states in his opposing memorandum:

> Plaintiff argues that he did fall faint by not understanding what transpired. Plaintiff needed assistance with medical, but instead Plaintiff was deployed by OC mace utilized by (Defendant) Lt. Bauer. Plaintiff has a history of mental illness dated back to 1998. Mental Health Records will show that Plaintiff is documented as a C1-Patient.

(Doc. 34 at 7). Insofar as plaintiff intends to argue that Bauer was not entitled to resort to the use of OC spray due to plaintiff's mental state, his argument is not supported by the record. Although plaintiff repeatedly stated he was "crazy" and mental health personnel were summoned after OC spray was deployed, there is no indication in the record that plaintiff was incoherent or that his ability to understand or comply with defendants' orders to follow strip search procedures was compromised. The DVR recording belies plaintiff's assertion that he did not understand what was happening. Plaintiff engaged in a series of voluntary actions while in the strip cage that show he was aware of the circumstances and had the ability to comply with the officers' orders. Plaintiff deliberately sat down in the strip cell cage, stood up when the negotiator approached, stated his name, said he wanted a lawyer and that he would not say anything further until he had one, informed the negotiator that he would not comply with procedures, and told the negotiator he was going to lie down and then deliberately did lie down on the floor and remained

15

in that position until Bauer deployed the OC spray. (Doc. 31, Exh. 5, DVR Recording, 2:22-3:45). Plaintiff also held out a sandwich to the negotiator and asked if he was hungry. The DVR recording thus refutes plaintiff's allegation that prior to use of the OC spray he felt faint, lacked understanding of the situation, and was in need of some type of medical attention.

Plaintiff has not introduced any evidence to counter the video and medical evidence showing that Bauer's use of force was reasonable. The unrefuted evidence establishes that Bauer applied force in a good-faith effort to restore discipline rather than maliciously to cause pain. *See Jennings*, 93 F. App'x at 725. Bauer's use of OC spray in the face of plaintiff's repeated refusal to follow direct orders prior to use of the spray did not violate plaintiff's Eighth Amendment rights. Defendant Bauer is entitled to summary judgment on plaintiff's Eighth Amendment claim premised on the use of OC spray.

Defendant Bauer is also entitled to summary judgment on any claim that he violated plaintiff's Eighth Amendment rights by failing to intervene in another officer's alleged excessive use of force. Under Sixth Circuit law, "a correctional officer who observes an unlawful beating may, nevertheless, be held liable under § 1983 without actively participating in the unlawful beating." *Dixon v. Neubacher*, No. 1:12-cv-1213, 2015 WL 1476776, at *19 (N.D. Ohio Mar. 31, 2015) (quoting *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990)). A correctional officer generally is liable for failure to protect prisoners from excessive force if "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Id.* (citing *Cole v. City of Dearborn*, 448 F. App'x 571, 577 (6th Cir. 2011) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). Where officers do not have "a realistic opportunity to intervene and prevent harm," such as in a situation where an incident develops in a matter of seconds, they

typically will not be held liable for failure to intervene. *Id.* (quoting *Ontha v. Rutherford Cnty., Tenn.,* 222 F. App'x 498, 506 (6th Cir. 2007) (citing cases); *Kowolonek v. Moore,* 463 F. App'x 531, 539 (6th Cir. 2012)). An officer may be held liable for failing to intervene where the "underlying episode of excessive force has spanned a sufficient period of time for a nearby defendant to both perceive what was happening and intercede to stop it." *Ontha,* 222 F. App'x 506; *Durham v. Nu'Man,* 97 F.3d 862, 868 (6th Cir. 1996) (defendant nurse was not entitled to summary judgment when she watched on her monitor as a beating that "lasted approximately ten minutes" unfolded and continued to watch from the doorway of the room where the beating occurred).

The DVR recording here shows that the situation was fluid and the circumstances unfolded rapidly following plaintiff's removal from the strip cage. There is no indication in the record that Bauer could have anticipated or stopped another officer's use of force in this situation. Defendant Bauer did not violate plaintiff's Eighth Amendment rights by failing to intervene in another officer's alleged excessive use of force.

Defendant Dillow argues that plaintiff has made no allegations of excessive force against him other than to allege that he was part of the five-man team that responded to the incident on May 12, 2015, which is insufficient to support the imposition of liability on him. (Doc. 31 at 13). Dillow argues that he cannot be held liable for a violation of plaintiff's Eighth Amendment rights based solely on the conduct of other officers. (*Id.*; *see, e.g., Reilly v. Vadlamudi*, 680 F.3d 617, 624-25 (6th Cir. 2012) ("Because it is well-settled that qualified immunity must be assessed in the context of each individual's specific conduct, this Court analyzes separately the allegations concerning the conduct of each Defendant.") (citing *Heyne v. Metro. Nashville Pub. Sch.,* 655 F.3d 556, 564 (6th Cir. 2011)).

Plaintiff's only allegation against defendant Dillow in the amended complaint is that he approached the strip cage with other members of the five-man team. (Doc. 5 at 7). Plaintiff does not allege, and has not introduced any evidence in response to the motion for summary judgment to show, that defendant Dillow used force against him. Thus, there is no genuine dispute as to any material fact on plaintiff's Eighth Amendment claim against Dillow. Plaintiff cannot establish that Dillow violated his Eighth Amendment rights by using excessive force against him. Further, for the reasons explained *supra*, the unrefuted evidence does not permit a finding that Dillow failed to intervene in any other officer's alleged excessive use of force during the May 12, 2015 incident. Defendant Dillow is entitled to summary judgment on plaintiff's Eighth Amendment claim against him.

Plaintiff alleges that defendant Eaches violated his Eighth Amendment rights by choking him after he had been placed face down on the bed in J2-13. (Doc. 5 at 7). Plaintiff alleges that after he was sprayed with OC spray, he was placed in cuffs from behind and shackles and placed faced down in a "strong cell" where Eaches choked him while someone struck him in the eye. (*Id*.). Plaintiff alleges he was beaten and left in that condition. (*Id*.). Defendant Eaches argues he is entitled to summary judgment on plaintiff's excessive force claim because there is no evidence in the record to show that he choked plaintiff. (Doc. 31 at 12). Eaches relies on the DVR recording, the medical evidence, and the post-incident statements to support his contention that there is no material dispute on this issue. (*Id*., citing Exh. 1, pp. 79, 81; Exh. 5, DVR recording, 8:45, 13:15-13:32).

Plaintiff has not addressed his excessive force claim against Eaches in his response to the motion for summary judgment, and he has not produced any evidence to support his allegation that Eaches choked him. Nor does the evidence of record corroborate plaintiff's claim. The

video evidence shows that officers other than Ruckel are standing back from plaintiff and no other officer has his hands close to plaintiff until just before Ruckel strikes plaintiff, at which point an officer who defendants identify as Eaches appears to be reaching toward plaintiff's shoulder with his right arm and his left hand is seen briefly at the side of the bed. (Doc. 31 at 12; Exh. 5, DVR recording, 8:43-45). This is inconsistent with plaintiff's allegation that Eaches choked him while someone struck him in the eye. Further, plaintiff did not report to medical staff that he had been choked, which is not consistent with his claim. (*Id.*, citing Exh. 1, pp. 79, 81; Exh. 5, DVR recording 13:15-13:32). Further, no injuries consistent with choking, such as bruising in the neck area, are noted in the medical reports. (*Id.*, Exh. 1, pp. 111, 112). Finally, plaintiff alleges in his response to the motion for summary judgment that his mouth was open and his teeth were showing when Ruckel struck him because he was gasping for air, in part because Eaches was applying pressure to plaintiff's right shoulder with his right hand (Doc. 34 at 3), which is also inconsistent with plaintiff's claim that Eaches was choking plaintiff when Ruckel struck him.

Thus, plaintiff has not produced any evidence to show that Eaches choked plaintiff, or applied other force maliciously and sadistically rather than in a good faith effort to restore discipline and order. Nor has plaintiff introduced evidence that shows Eaches had reason to know that excessive force would be used by another officer and that Eaches had both the opportunity and the means to prevent the harm from occurring. *See Cole*, 448 F. App'x at 577. There is no genuine dispute as to any material fact on plaintiff's claim against Eaches. Defendant Eaches is entitled to summary judgment on plaintiff's Eighth Amendment claim.

### ii. *Plaintiff's claim for deliberate indifference to his serious medical needs*

Plaintiff brings a claim for violation of his Eighth Amendment rights against defendant Ahmed based on this his alleged failure to provide medical treatment to plaintiff. Plaintiff's sole allegation against Ahmed in the amended complaint is that he was deliberately indifferent to plaintiff's medical needs, "stating that [plaintiff] should buy anti inflammatory O.T.C." (Doc. 5 at 7).

Defendant Ahmed argues that plaintiff's allegations are insufficient to show that he was deliberately indifferent to plaintiff's serious medical needs. Dr. Ahmed alleges that the medical records show plaintiff was examined following the May 12, 2015 incident, his lacerations and abrasions were cleaned and dressed, he was given Motrin, and an x-ray was ordered, which disclosed no broken bones. (Doc. 31 at 21, citing Exh. 1, p. 112). In response, plaintiff alleges only that there are inconsistencies in the evidence related to the medical records and the injuries he sustained. Plaintiff alleges that defendants did not include injuries to his right eye in his Medical Exam Report (Doc. 31, Exh. 1, p. 112), defendants included the medical report for a second inmate in the Use of Force Checklist (*Id.*, Exh. 1, p. 71), and defendants submitted the medical record of another inmate (Rutherford) to the Ohio Department of Rehabilitation and Correction in connection with the Use of Force investigation (*Id.*, Exh. 1, p. 67). (Doc. 34 at 7).

Plaintiff makes no allegations against Dr. Ahmed in his response to the motion for summary judgment. He does not allege that Dr. Ahmed ignored his serious medical needs, and he has not provided any evidence to support a finding to that effect. Plaintiff's allegations concerning submission of another inmate's medical report during the Use of Force Investigation have no bearing on whether Dr. Ahmed was deliberately indifferent to his serious medical needs. Further, plaintiff has drawn no connection between his allegation that he suffered eye injuries

that were not documented in the medical reports and Dr. Ahmed. In fact, plaintiff alleges that he consulted with an eye doctor for a change of vision in the right eye. (*Id*. at 9). Thus, the record shows there is no genuine dispute as to any material fact on plaintiff's claim against Dr. Ahmed. Defendant Ahmed is entitled to summary judgment on plaintiff's Eighth Amendment claim.

### E. *Heck v. Humphrey bar*

As an alternative ground for dismissal of plaintiff's claims, defendants contend that the claims are barred under the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . ." *Id*. at 486-87. Where a judgment in favor of the plaintiff "would necessarily imply the invalidity of his conviction or sentence," his § 1983 claim is not cognizable unless the plaintiff can show the conviction or sentence has been set aside. *Id*. at 487. Defendants argue that *Heck* applies to prison disciplinary convictions and bars a prisoner's § 1983 claim where a favorable outcome on such claim would imply the invalidity of a related prison disciplinary conviction. (Doc. 31 at 23-24).

This Court has previously explained that "*Heck* is not automatically implicated by a suit that impacts a conviction in a prison disciplinary proceeding, absent evidence that the disciplinary conviction affected the fact or duration of a prisoner's underlying sentence." *Clark v. Burke*, No. 1:16-cv-547, 2017 WL 397407, at *3-4 (S.D. Ohio Jan. 10, 2017) (Report and Recommendation) *adopted,* 2017 WL 386838 (S.D. Ohio Jan. 27, 2017) (citing *Muhammad v.*

*Close*, 540 U.S. 749, 751-52 (2004)). As in *Clark*, the complaint here does not allege that plaintiff's RIB conviction impacted the duration of his confinement, and defendants have not produced any evidence showing that plaintiff's RIB conviction actually impacted the duration of his confinement. *Id.*, at *4. Thus, "any collateral attack on the RIB conviction through this lawsuit does not necessarily imply that plaintiff's continued confinement or imprisonment is invalid." *Id.* Defendants' argument that plaintiff's claims are barred by *Heck* should be rejected. *See also Burfitt v. Bear*, No. 1:15-cv-730, 2017 WL 2362403, at *8 (S.D. Ohio May 31, 2017) (Report and Recommendation) (Bowman, M.J.), *adopted*, 2017 WL 3115313 (S.D. Ohio July 21, 2017).

### F. Conclusion

Plaintiff has not introduced affidavits or other evidence to create a genuine dispute as to any material fact. The undisputed evidence does not show that any named defendant violated plaintiff's Eighth Amendment rights. Defendants therefore are entitled to summary judgment on plaintiff's claims against them in their individual capacity. It follows that defendants cannot be held liable for violations of plaintiff's Eighth Amendment rights in their official capacity. Summary judgment should be granted in defendants' favor on all claims.

## II. Plaintiff's motion to proffer evidence (Doc. 37)

Plaintiff has filed a motion to proffer evidence that the SOCF mailroom allegedly tampered with his outgoing mail. (Doc. 37). Plaintiff states that such evidence does not relate to this lawsuit. Plaintiff's motion is therefore denied. Plaintiff must file another lawsuit to the extent he wishes to pursue a claim of alleged tampering with his legal mail that is unrelated to this lawsuit.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's motion to proffer evidence (Doc. 37) is **DENIED**.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendants' motion for summary judgment (Doc. 31) be **GRANTED**.

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Court Order adopting this Report and Recommendation would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 11/1/17

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CHARLIE L. CARLISLE, III,
    Plaintiff,

Case No. 1:16-cv-259
Barrett, J.
Litkovitz, M.J.

vs.

WILLIAM BAUER,
    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).